## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **SPRINT NEXTEL CORPORATION**, *et al.*, <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **THE CELL XCHANGE, INC.,** *et al.*, <br><br> **Defendants.** | **Civil Action No. 8:14-CV-00233-JDW-AEP** |

## DEFENDANTS THE CELL XCHANGE AND RATHBONE'S OPPOSITION TO SPRINT'S MOTIONS TO COMPEL

Defendant The Cell XChange, Inc. ("TCX") and Defendant James Rathbone hereby oppose Sprint's Motions to Compel and for Sanctions (Dkt. 82 (TCX) and Dkt. 83 (Rathbone).)

### I.    SPRINT FAILED TO COMPLY WITH LOCAL RULE 3.01(G)

As an initial matter, the Court should strike Sprint's Motions to Compel for failure to comply with Local Rule 3.01(g). In particular, Sprint's certifications attempt to mislead the Court, falsely claiming that "Defendant **refused** to supplement its discovery responses," (Mot. to Compel TCX at 26), and that "Defendant **refused** to supplement his discovery responses." (Mot. to Compel Rathbone at 18 (emphasis added).)

On February 2nd, Sprint's counsel sent an e-mail to defense counsel with a proposed amended schedule. Therein, Sprint's counsel mentioned that they intended to file motions to compel.

On February 5th, the undersigned counsel responded, consenting to the proposed schedule, and, more importantly, inquiring, "*On the letter re deficient discovery responses, did you send via e-mail? My apologies if I missed it come thru, but the only e-mails that I see from you since November are a few e-mails from you in December re mediators.*"

Later that day, Sprint's counsel responded with a copy of the letter, stating "Thanks for the initial disclosures. *Attached is another copy of the good faith letter we sent on December 17th. It was sent via e-mail and regular mail.*"   Naturally, the undersigned counsel assumed that Sprint would permit counsel the opportunity to respond and engage in the meet-and-confer process in order to resolve any disputes and avoid needless motion practice.

Sprint's counsel, however, did not wait for a response (nor did they ever at any point reach out via phone in an effort to follow-up on a letter that they had sent the week before Christmas). Instead, the following day, Sprint moved to compel, without making any attempt to confer, let alone a "good faith attempt" as required by this Court's rules.

Moreover, the only communication from "Defendant" was a request to resend the letter. Accordingly, Sprint's claim that "Defendant *refused* to supplement" is a plain attempt to mislead the Court.  Sprint's failure to satisfy the local rules of this Court provide a sufficient basis for denial of Sprint's motions.  At minimum, however, Sprint's failure to make a good faith effort to resolve the discovery disputes without involving the Court makes sanctions improper regardless of the outcome.  Fed. R. Civ. P. 37(a)(5)(A)(i) ("the court must not order payment" if "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action").

## II.   THE COURT SHOULD DENY SPRINT'S MOTION TO COMPEL AGAINST DEFENDANT TCX

Sprint's "Motion to Compel" is reflective of its overall approach in these cases – the filing of an overladen form complaint, followed by a color-by-numbers approach that includes serving Sprint's "routine" discovery requests, and then the filing of motions to compel when it does not like the answers.

Defendant TCX is trying, desperately, to abide by the processes and procedures demanded by this Court and the Eleventh Circuit, all of which are specifically intended to avoid the "years-long discovery sinkhole" into which Sprint is trying to drag this litigation.  It is unfortunate that Sprint is fighting not only TCX, but also the Court, at every turn.

On January 30, 2014, Sprint filed the same form complaint that it had filed across the country.  Fortunately, Judge Whittemore, applying the stringent pleading requirements demanded of plaintiffs in this Circuit, struck the Complaint in its entirety due its needless length and shotgun approach.  (Dkt. 5.)  The Court held — in accord with the Eleventh Circuit — that Sprint's shotgun approach "fails to provide Defendants with fair notice of the <u>individualized</u> claims."  (*Id.* (emphasis added).)

On February 21, 2014, Sprint filed its Amended Complaint, which effectively rejected Judge Whittemore's instructions.  (Dkt. 7.)  Accordingly, on July 25, 2014, the Court struck the Amended Complaint as a "shotgun pleading."  (Dkt. 31.)  The Court again faulted Sprint's "scattershot approach of pleading 15 claims and seeing what sticks" as creating the "potential to 'metastasize into a years-long discovery sinkhole.'"  (Dkt. 31 at 2 (quoting *Paylor v Hartford Fire Ins. Co.*, 748 F.3d 1117, 1125 (11th Cir. 2014).)

The Court concluded by holding that Sprint's "failure to properly delineate the boundaries of relevant claims and the potential for a 'massive waste' of resources requires that the Amended Complaint be stricken and repleader ordered." (*Id.* at 3.)

On August 12, 2014, Sprint filed its Second Amended Complaint ("SAC"). (Dkt. 38.) That Complaint was not simply dismissive of the Court's instructions; it bordered on contempt.

Judge Whittemore instructed Sprint that it was improper that "Each Count incorporates substantially the same set of introductory allegations." (Dkt. 31 at 2.) Sprint responded not by removing the shotgun paragraphs that Judge Whittemore had identified, but by *removing the numbering* from those paragraphs — the very paragraphs that make the SAC a "shotgun pleading" — while still beginning each Count by incorporating the same set of "introductory allegations." (*See* SAC at 11, 12, 13, 14, 15, 16, 20, 22 and 24.)[1]

Judge Whittemore also identified as improper Sprint's "scattershot approach of pleading 15 claims and seeing what sticks." (Dkt. 31 at 2.) Sprint's response was not to eliminate claims or limit claims to particular Defendants. Instead, Sprint *combined* what were previously 14 separate causes of actions into 9 undifferentiated counts, yet another practice that the Eleventh Circuit has "resoundingly denounced." *Marlborough Holdings Group, Ltd. v. Azimut-Benetti*, 505 Fed. Appx. 899, 907 (11th Cir. 2013).

---

[1] Moreover, the only reason that the incorporated paragraph numbers differ from the Amended Complaint is that Sprint combined paragraphs that were previously separate. (*See, e.g.*, SAC ¶ 2 (combining previous paragraphs 9 and 10); SAC ¶ 16 (combining previous paragraphs 1, 21 and 22); and SAC ¶ 17 (combining previous paragraphs 23 and 24).)

Likewise, Sprint artificially reduced its paragraph count by *combining* paragraphs, and even artificially shortened an attachment (its Terms and Conditions) by three pages by submitting a version <u>with smaller font</u>.  (*Cf*. Dkt. 7-2, Dkt. 38-2.)

Unbowed by Judge Whittemore's clear instructions regarding discovery, Sprint forged ahead with its standard operating procedure, serving 27 sets of its standardized discovery requests on the various defendants.  Indeed, Sprint made a telling admission in its Opposition to Defendant TCX's motion to stay, stating that "these are **routine** requests for production, interrogatories and requests for admissions."  (Dkt. 54 at 17 (emphasis added).)  Sprint was correct in one sense that the requests are *routine*: they are identical to the requests that Sprint has served in every other case that it has filed.  In those cases, however, the Court had not repeatedly chastised Sprint for attempting to drag the parties into a "years-long discovery sinkhole."  In those cases, the Court had not demanded that Sprint replead its overstuffed complaint not once, but twice, to avoid the "massive waste" of resources that invariably results from Sprint's "routine" discovery practices.

Sprint has moved to compel for a simple reason – it does not like the answers.  Sprint, however, cannot compel into existence facts that do not exist.  The reality is that Sprint filed its cookie-cutter complaint of generic allegations that have no applicability to TCX or its conduct, and now Sprint is complaining that TCX is not providing Sprint with a case that does not exist.

### A.    Sprint's Motion Fails Its Burden To Establish How <u>Used</u> Handsets Are Relevant To A Complaint Explicitly Limited To "<u>New</u> Sprint Handsets"

The primary issue raised by Sprint's Motion to Compel is whether Defendants are required to provide unlimited discovery regarding phones that are entirely outside the scope of this litigation: <u>used phones</u>.

It is beyond question that Sprint's Complaint is expressly limited to "**new Sprint Phones**." *See, e.g.*:

- SAC ¶ 22 (accusing Defendants of "acquiring, altering, and reselling **new** Sprint Phones");

- SAC ¶ 23 ("as detailed herein they improperly solicit and resell **new** Sprint Phones");

- SAC ¶ 24 ("selling **new** Sprint phones);

- SAC ¶ 26 ("**new** Sprint iPhones");

- SAC ¶ 27 ("**new** Sprint iPhone," "**new** Sprint Phone," "**new** Sprint Phones");

- SAC ¶ 29 ("**new** Sprint Phones");

- SAC ¶ 30 ("**new** Sprint Phones");

- SAC ¶ 31 ("**new** Sprint Phones");

- SAC ¶ 32 ("**new** Sprint iPhone," "**new** Sprint Phones");

- SAC ¶ 34 ("**new** Sprint iPhone");

- SAC ¶ 37 ("**new** Sprint Phones");

- SAC ¶ 38 ("**new** Sprint Phones," "**new** Sprint iPhone")

In contrast, Sprint's discovery requests were invariably drafted to cover not only "*new* Sprint Handsets," but "*any* Sprint Handsets." Accordingly, Defendant TCX properly limited its responses to the phones at issue: new Sprint Handsets.

As Defendant TCX stated in its discovery responses, it participates in the wholesale market for **used** handsets, including used phones initially programmed to operate on the Sprint network.[2] Used phones, however, are outside the scope of this litigation, because Sprint has not, and cannot, claim that it has an interest in phones that it has sold into the stream of commerce. Moreover, as with any "durable good," there are exponentially more "used" goods bought and sold on the wholesale market than new goods. That is particularly true for Defendant TCX, an entity that affirmatively limits itself to the wholesale market for "used goods."

The Eleventh Circuit's decision in *R.M.R. by P.A.L. v. Muscogee County Sch. Dist.*, 165 F.3d 812, 817 (11th Cir. 1999) is directly applicable here. The student plaintiff there had been molested by a teacher, and the student claimed that the school district was vicariously liable, which required plaintiff "to find other students who were molested by [the teacher] and ask whether they had reported [the teacher's] sexual abuse." When the plaintiff sought to compel production of "rolodex cards" for all of the teacher's students, the school district refused because the discovery was overbroad. The Eleventh Circuit agreed: "Although appellants requested the addresses and phone numbers of hundreds of students to gain this information, there was a much narrower and less burdensome manner of discovery: appellants could have asked, by interrogatory, for the names (as well as the addresses and phone numbers) of *all students who complained that [the teacher] sexually abused them*." *Id.* at 817 (emphasis added).

---

[2] Notably, this is the only knowable definition for the term "Sprint Handset" (that the phone was "initially programmed for use on the Sprint network"). The vast majority of smartphones — including all iPhones — *do not* carry a physical trademark of the carrier on the body of the phone. Accordingly, any such phones that Sprint sold that were not "locked" by programming for use on the Sprint network (meaning phones manufactured for use on any carrier's network) would provide no indication that they were "Sprint Handsets." Accordingly, Defendant TCX limited its responses to the information that it was able to provide, *i.e.*, information regarding handsets initially programmed for operation on the Sprint network.

In addition, Sprint operates its own "Buyback and Trade-in Program" through which it purchases used handsets from other carriers, which Sprint then resells into the wholesale market. Under Sprint's definition, all of those handsets of competing carriers are deemed "Sprint Handsets."

The Eleventh Circuit continued, holding that, as a matter of law, "Only if [defendant] balked at this request would appellants have been justified in requesting student directory information for all of [the teacher's] former students." *Id.* (emphasis added) (citing *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1034 (9th Cir.1990) for the holding "that district court did not abuse discretion by denying appellants' request for all of defendant's confidential personnel files, because '*focused discovery could have been employed*' in order to discover the relevant information") (emphasis added).)

That holding is directly applicable here. In *R.M.R. by P.A.L.*, the issue was that there were comparatively few students who had reported being assaulted when viewed in comparison with the entire student body. As a result, the Eleventh Circuit denied a request for information about *all* of the students when there was a "much narrower and less burdensome" request that the plaintiff could have made: a request for information about *relevant* students.

Likewise, of all the requests at issue here, Sprint properly limited only *one* of them to the phones at issue in this case. (Mot. to Compel TCX at 16 ("Request to Produce No. 12: All materials, e-mails, brochures and other documents you used to recruit persons to purchase **new** Sprint Handsets for you or for resale by you." (emphasis added).) In every other request, Sprint demanded information for all Sprint Handsets, making the requests facially overbroad and unduly burdensome given the needless inclusion of *used* Sprint Handsets.

Importantly, "the party seeking discovery has the threshold burden of showing that the requested discovery is relevant." *Salvato v. Miley*, Case No:5:12-CV-635-Oc-10PRL, 2013 U.S. Dist. LEXIS 81784, at *6 (M.D. Fla. June 11, 2013). As in *Salvato*, Sprint "has 'essentially sought permission to conduct 'a fishing expedition' . . . on the mere hope of finding relevant evidence.'"

*Id.*, at \*7 (quoting *Tompkins v. Detroit Metropolitan Airport*, 278 F.R.D. 387, 388 (E.D. Mich. Jan. 18, 2012).)  "Courts have long held that 'while the standard of relevancy in discovery is a liberal one, it is not so liberal as to allow a party to roam in the shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.'" *Donahay v. Palm Beach Tours & Transp., Inc.*, 2007 U.S. Dist. LEXIS 65163 (S.D. Fla. Apr. 13, 2007) (rejecting motion to compel broad request "when a narrower and less burdensome request could easily be crafted to obtain the same information") (quoting *Food Lion, Inc. v. United Food*, 103 F.3d 1007, 1012-13 (D.C. Cir. 1997).)

Sprint has not, and cannot, meet its threshold burden to show that information about handsets that are outside the scope of this litigation is nonetheless relevant.  Accordingly, the Court should deny Sprint's Motion to Compel to the extent that it seeks information about used Sprint Handsets. *See, e.g., Scott v. Publix Supermarkets*, 2008 U.S. Dist. LEXIS 35420, at \*2 (M.D. Fla. (denying motion to compel production of the entire personnel file of the defendant's employee, because defendant had instead offered to produce "personnel files related to discipline" and finding "this to be a proper Response").)

## B. Defendant TCX's Responses Regarding The Specific Requests For Admission

### Request For Admission 4

Sprint's objection to this response defies logic.  TCX went out of its way to cogently respond to an RFA rendered useless by its overbreadth.  Sprint's Complaint is limited to "new Sprint Phones."  Accordingly, TCX provided more than a full and complete response, and broke that response down into meaningful pieces to point out that: (1) TCX does not buy or sell phones manufactured by Sprint; and (2) TCX does not buy or sell new Sprint handsets.  Moreover, TCX

9

went beyond the scope of the Complaint to note that it participates only in the market for used handsets.

### Request For Admission 5

Defendant TCX made the reasonable assumption that Sprint did not ask the same question twice, meaning that Sprint is asking for something other than "Handsets" by inquiring about "Products." Accordingly, TCX responded that it does not purchase or sell anything other than handsets. Moreover, Sprint has failed to satisfy its threshold burden to show that the requested discovery is relevant. Defendant TCX is genuinely unsure what "Sprint Products" is meant to include. More importantly, that phrase never even appears in the Complaint and is therefore presumptively outside the scope.

### Request For Admission 9

TCX responded to the only aspect of the RFA that is even theoretically relevant, affirmatively denying that it has ever *held itself out* as an authorized Sprint dealer. That is the essential element of the trademark claim; it is also the information within the possession of TCX. Defendant TCX can speak to what it did, meaning whether or not it held itself out as an authorized Sprint dealer. Sprint, likewise, is the party that can speak to what it did, meaning whether or not it affirmatively authorized an entity as a licensed Sprint dealer.

**Request For Admission 10**

Sprint's objection fails for the same reason as RFA 9.  Defendant TCX can only speak to its own conduct; not to Sprint's.  And the only fact that is knowable by TCX is that it never held itself out as an authorized Sprint retailer.

**Request For Admission 11**

TCX's response contained an obvious typographical error.  The word "not" was inadvertently included in the denial.  Thus, the correct response states that "Defendant denies that Sprint handsets that are neither purchased from Sprint nor activated on the Sprint network are subject to any terms and conditions."

To the extent that a supplemental response is required, Defendant's response is **<u>Denied</u>**. Defendant TCX cannot emphasize that denial strongly enough.  Sprint Handsets, after being sold by Sprint, are not subject to terms and conditions.  Sprint's provision of Services is subject to terms and conditions, not Sprint Handsets.  A fulsome explanation is provided below in Section IV.

**Request For Admission 13**

Again, Sprint demands that Defendant TCX speak to what Sprint did.  Defendant TCX cannot speak to whether Sprint did or did not do something, including whether Sprint authorized Defendant TCX to use the Sprint name in advertising, or in any other fashion.  Moreover, the issue is irrelevant for the sale of *used* Sprint Handsets, because it is a bedrock rule of trademark law that it is not a violation to use a trademark to accurately describe used goods for sale.  *See Tiffany (NJ) Inc. v. eBay Inc.*,  600 F.3d 93 (2d Cir. 2010) cert. denied, 131 S. Ct. 647 (U.S. 2010).

### C.    Defendant TCX's Responses Regarding The Specific Interrogatories

**Interrogatory No. 2**

This interrogatory is a perfect example of one that is manifestly overbroad and improper in the Eleventh Circuit.  Defendant TCX has provided initial disclosures and provided a fulsome witness list.  Sprint's boilerplate complaint claims that it is an international conspiracy to buy and sell Sprint phones.  The undersigned counsel is aware of hundreds of wholesale dealers that Sprint has sued, and Sprint demands that counsel provide the "names and addresses of all persons" who might have some knowledge of any of those cases.  With respect to this action, and the purported conspiracy to buy and sell "new Sprint Phones," Defendant TCX responded that it is not aware of anyone not named in this action.

**Interrogatory No. 3**

Products, once again, is an unknown phrase.  Moreover, this Interrogatory is grossly overbroad and unduly burdensome in that it is not limited to "new Sprint Phones."  Defendant TCX is a participant in the wholesale market for used handsets.  There is no justification to require TCX to compile a list of all persons with whom it has communicated regarding the purchase or sale of phones that are not at issue in this case.

Moreover, the cited paragraphs refer to a communication by "Defendant Parris," and that was a communication where Defendant Parris was acting in his individual capacity and not within the scope of his employment — which was terminated as a result — with Defendant TCX.  That fact was reflected in Sprint's previous Complaints, and Sprint's attempt to rewrite history in the SAC is neither appropriate nor effective.

**Interrogatory No. 5**

Sprint has demanded that Defendant TCX provide, in Interrogatory form, its entire Human Resources history, demanding information that has no bearing on this action. This is plainly improper in the Eleventh Circuit. Nonetheless, Defendant TCX agreed to meet-and-confer, and it will do so, preferably after the contours of Sprint's SAC are set (in the unlikely event that any part of it survives dismissal).

**Interrogatory No. 6**

Defendant TCX described its business. Sprint cannot compel a different response simply because it wishes for a different answer. Moreover, the remaining information sought, such as "professional groups" and "non-professional affiliations" are an abject fishing expedition, precisely the type of "extended and largely aimless discovery" that Judge Whittemore's Order striking Sprint's Amended Complaint was expressly intended to prevent.

**Interrogatory No. 7**

Once again, Sprint has sought discovery having no bearing on this action. This action is about "new Sprint Phones," while Sprint's Interrogatory is unbounded at all, asking for "mobile telephones" of any sort or condition. Defendant TCX answered with the information that is relevant to this case. That is what the rules of this Circuit demand.

**Interrogatory No. 8**

Defendant TCX does not have paid advertising, hence its response that it relied on word of mouth.  Sprint cannot compel the response that it wants to hear.  Moreover, this Interrogatory asks for information that is wholly irrelevant to this action.

**Interrogatory No. 11**

Sprint's Requests for Admission are aimless.  The first RFA, as an example, demands an admission that "the factual allegations about you in the Complaint are true."  According to Sprint, the group pleading paragraphs are about every defendant.  And Sprint is demanding to know every fact that is the basis for not admitting that every paragraph in the SAC is true.  If there is a facial affront to Judge Whittemore's Orders, attempting in vain to instruct Sprint to not force Defendants to "sift through innumerable allegations," it is this objection.

If Sprint ever submits a Complaint that can survive dismissal, Defendants will be required to provide an Answer.  Until then, Sprint's objection is improper.

**Interrogatory No. 12**

Sprint served this Interrogatory when it was still clinging to the false belief that World Wide Cells was a corporate affiliate of The Cell XChange.  (*See* Complaint and Amended Complaint (naming "The Cell XChange, Inc. a/k/a World Wide Cells").)

In the SAC, however, Sprint finally conceded that the two entities are not affiliated, which is why Sprint was forced to add as an additional defendant the actual corporate entity that is known as World Wide Cells: World Wide *Sales* LLC.  (*See* SAC (naming "World Wide Sales 'LLC' a/k/a World Wide Cells).)

Accordingly, Defendant TCX responded to the information requested,[3] stating affirmatively that there is in fact no affiliation or relationship between the two entities, a fact reflected by Sprint's amendment of the named parties. Defendant TCX has no relationship or affiliation, and has no communications with World Wide Cells.

### D. Defendant TCX's Response Regarding The Requests For Production

Defendant TCX's responses to the document requests took two forms: (1) there are no such relevant documents; or (2) Defendant TCX will produce the relevant documents in its possession that are relevant and responsive to the Request, to the extent that such documents exist.[4] Sprint's complaint that Defendant TCX has not conducted a document collection, review, and production — all before the Court has even decided the motions to dismiss — defies belief.

The contours of this case remain unknown more than a year after Sprint initiated this case. That is not because of any conduct by Defendants, but because of Sprint's obstinate refusal to comply with Judge Whittemore's instructions to eliminate its shotgun pleading approach. Sprint is effectively demanding that Defendants conduct a wholesale collection, review, and production of documents now, and *then do so again* after the contours of the case are finally established. There is perhaps no better example of "the discovery goat rodeo" that the Eleventh Circuit has implored the trial courts to avoid, in the exact case quoted by Judge Whittemore in striking Sprint's

---

[3] This interpretation is further reflected by Sprint's final Request for Production (both of which appear to have been tacked on to Sprint's "routine" discovery requests). That Request for Production demands "all documents that support or refute your relationship or affiliation with World Wide Cells." (See Mot. to Compel TCX at 25.)

[4] The only exception to which Sprint objected is Request Number 5, which was the only Request that asked about "Sprint <u>Products</u>," which are presumably something different than Sprint Handsets. Defendant TCX is genuinely at a loss as to what Sprint Products could refer to, if not accessories, which Defendant TCX does not sell. Its best guess is that, because Sprint's Complaint and Document Requests are copied from cases about <u>prepaid</u> phones, that "Products" is a vestigial term meant to refer to the minutes or cards that are sold for such phones. Sprint, however, does not sell prepaid phones under the Sprint name; there are no minutes or cards. Moreover, Defendant TCX has never sold Sprint service plans.

Amended Complaint.  *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1127 (11th Cir. 2014) (cited by Judge Whittemore for the need to avoid a "years-long discovery sinkhole").

For two of the requests, Sprint did not even limit the requests to Sprint Handsets, or even to any Handsets.  Specifically, Request 26 demands a "copy of your customer list."  There is no attempt whatsoever to limit the request to information relevant to Sprint's Complaint. Accordingly, Defendant TCX responded that it would produce such information regarding "new phones manufactured for activation on a Sprint telecommunications network," which is the only knowable definition of "Sprint Handsets."

Likewise, Defendant TCX responded that it will provide the same information with respect to Request 27, an equally unlimited request for a "copy of your supplier and/or vendor list."

For the remainder of the requests, Sprint demanded documents regarding "any Sprint Handset" (although it unexplainably switched to "Sprint Products" for the final few requests). Again, Sprint's Complaint is expressly limited to "**new** Sprint Phones."  Accordingly, information and documents about **used** Sprint Phones is outside the scope of the litigation and presumptively irrelevant.  More importantly, for purposes of the Motion to Compel, Sprint has not even attempted to meet its burden to show that the requested information is relevant.  In this Court, "the party seeking discovery has the threshold burden of showing that the requested discovery is relevant." *Salvato v. Miley*, Case No:5:12-CV-635-Oc-10PRL, 2013 U.S. Dist. LEXIS 81784, at *6 (M.D. Fla. June 11, 2013).  Nowhere in its Motion to Compel, however, does Sprint even attempt to establish the relevancy of used Sprint Handsets.  Thus, Sprint's Motion to Compel fails for that reason alone.

Moreover, Defendant TCX appropriately responded with respect to the phones that are actually at issue in this case. Indeed, Defendant TCX responded either that no such documents exist, or that it would produce the relevant documents in existence that are responsive to each request. That is precisely what the Federal Rules require.

## III.    THE COURT SHOULD DENY SPRINT'S MOTION TO COMPEL AGAINST DEFENDANT RATHBONE BECAUSE HE CORRECTLY RESPONDED TO THE REQUESTS IN HIS PERSONAL CAPACITY

Sprint named Defendant Rathbone in his individual capacity despite having provided no basis for piercing the corporate veil of The Cell XChange, Inc. Sprint's casual dismissal of the corporate form and its lack of respect for the Division of Corporations of the Florida Department of State are both manifestly improper.

"Under Florida law, courts may not pierce the corporate veil absent proof of misconduct." *Vasquez v. YII Shipping Co.*, 559 Fed. Appx. 841, 844 (11th Cir. 2014). In fact, that high bar requires three mandatory elements: "plaintiff must prove that 'the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence was in fact non-existent and the shareholders were in fact alter egos of the corporation,' the corporate form was 'used fraudulently or for an improper purpose,' and 'the fraudulent or improper use of the corporate form caused injury to the claimant.'" *Id.* (quoting *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. Dist. Ct. App. 2008) (emphasis added).)

Here, Sprint has not even attempted to satisfy one element of that test, let alone all three. Moreover, Defendant Rathbone has filed with this Court documents from the Division of Corporations for the Florida Department of State showing that The Cell XChange has been

properly incorporated since March 16, 2011, and that it remains a corporation in good standing in this state.  (Dkt. 18 at Ex. 3.)

Despite Sprint's plainly improper decision to name Mr. Rathbone in his individual capacity, he provided appropriate responses to the requested discovery regarding actions undertaken in his personal capacity.

Incredibly, the only allegation that Sprint cites in support of its hollow attempt to pierce the corporate veil is an allegation stated "upon information and belief."  (Mot. to Compel Rathbone at 15.)  In other words, <u>Sprint is not in possession of a single fact</u> to support even its benign allegation that Defendant Rathbone "is personally engaged" in any of the alleged conduct.  (*Id.*)  And Defendant Rathbone responded directly to that exact allegation, repeatedly informing Sprint that he "does not and has not engaged in the purchase and sale of handsets of any kind *in his personal capacity*."  (*Id.* (emphasis added).)

## IV.    SPRINT HANDSETS THAT ARE NOT "LEASED" OR "FINANCED" ARE NOT SUBJECT TO RESTRAINTS ON ALIENATION

Sprint Handsets are chattels.  Sprint's fundamental failure in these cases is the false belief that chattels travel with limitations.  A chattel cannot be "subject to terms and conditions."  Sprint's customers may be subject to terms and conditions, as Sprint may attach terms and conditions to its provision of Sprint *Services*.  In contrast, Sprint cannot attach limitations to goods that it places into the stream of commerce through sale (as opposed to leasing or licensing).  That is the fundamental basis of the first-sale doctrine: "the common law's refusal to permit restraints on the alienation of chattels."  *Kirtsaeng v. John Wiley & Sons, Inc.*, 133 S. Ct. 1351, 1363 (2013).

This is the fundamental reason why Sprint's case fails. Sprint has no retained interest in phones that it sells. If Sprint <u>sells</u> a phone, it conveys title, and Sprint cannot prohibit resale, regardless of whether it provides a discount. Even promotional goods that are provided for free are subject to the first-sale rule. *See, e.g., UMG Recordings, Inc. v. Augusto*, 628 F.3d 1175, 1179 (holding that recipients were free to resell promotional CDs because the distribution "effected a sale," and rejecting UMG's claim that the resale prohibition did not "create a license").

There is a reason that every software agreement is a <u>*license*</u> and not a <u>*sale*</u>. Sprint cannot prohibit resale unless it leases the phones, or retains a security interest. Sprint has now explicitly recognized this fact, as reflected in the advertising for its new "Lease" and "Finance" options:



As that advertisement indicates, with a "Lease" the customer never obtains title to the phone. With the "Finance" option, the customer may "Keep your phone after 24 months."

With the normal "Contract" option, however, the message (and admission) is clear:  "**Keep your phone on day one**."  In other words, Sprint conveys absolute title, because the transaction is a **sale**.  In such cases, the first-sale rule applies, as does the prohibition on restraints on alienation. As the Supreme Court reconfirmed in *Kirtsaeng*, and as has been the rule for centuries, if a man has a "chattel and give[s] or sell[s] his whole interest therein upon the condition that the Donee or Vendee shall not alienate the same, **the condition is void** . . . ."  *Kirtsaeng*, 133 S. Ct. at 1363 (quoting Lord Coke) (internal edits omitted).

Again, there is a reason that every software agreement is structured as a *license*, not a *sale*.[5] If a would-be seller of goods does not *sell* a good, but instead *licenses* its use, then the seller has not transferred title and there has been no "first sale."  Likewise, Article 2 of the Uniform Commercial Code — which governs transactions involving the *Sale* of *Goods* — does not apply, allowing the would-be seller to avoid § 2-403(1) (2002), which provides that "A purchaser of goods acquires **all** title to which his transferor had or had the power to transfer,"  including the right to resell.  (emphasis added).

As the Supreme Court has held for more than 100 years, "the right of alienation is one of the essential incidents of a right of general property in movables . . . ."  *Dr. Miles Med. Co. v. John D. Park & Sons Co.*, 220 U.S. 373, 404 (1911).  *See also Chianese v. Culley*, 397 F. Supp. 1344, 1345 (S.D. Fla. 1975) ("The general rule is that the right to convey property is one of the incidents of ownership, and the law will not permit the rights of ownership to be fettered by the imposition of restraints by grantors who both seek to convey their properties and at the same time maintain

---

[5] *See, e.g.*, Thomas Hemnes, *Restraints on Alienation, Equitable Servitudes, and the Feudal Nature of Computer Software Licensing*, 71 Denv. U.L. Rev. 577, 581 (1994) ("Lack of ownership avoids the 'restraint on alienation' problem because the user never has more than a bailment of the copy of the software," and thus "carefully drafted software licenses never 'sell' anything to the user, not even the copy of the program that is delivered to the user").

control over them").   Accordingly, since the time of Lord Coke and continuing to the present, the common law has prohibited restraints on alienation of chattels as "against Trade and Traffic, and bargaining and contract." *Kirtsaeng*, 133 S. Ct. at 1363 (quoting 1 E. Coke, Institutes of the Laws of England § 360, p. 223 (1628).)   As the Supreme Court held in *Keeler v. Standard Folding Bed Co.*, "the inconvenience and annoyance to the public that an opposite conclusion would occasion are too obvious to require illustration."  157 U.S. 659, 667 (1895).

The underlying rationale is relatively straightforward for the rule that "[r]estrictions upon the uses of chattels once absolutely sold are at least *prima facie* invalid; they must be justified for some exceptional reason." *RCA Mfg. Co. v. Whiteman*, 114 F.2d 86, 89 (2d Cir. N.Y. 1940).  The rationale, as Judge Learned Hand explained in *RCA*, is that restraints on alienation "are '*repugnant' to the transfer of title*." *Id*.  (emphasis added).  In other words, "such restraints take property out of commerce." *Meade v. Dennistone*, 196 A. 33 (Md. 1937).  Indeed, the Supreme Court in *Kirtsaeng* found that "Coke emphasizes the importance of leaving buyers of goods free to compete with each other when reselling or otherwise disposing of those goods."  Moreover, as this very case so readily demonstrates, the rule "also frees courts from the administrative burden of trying to enforce restrictions upon difficult-to-trace, readily movable goods."  Id.  Indeed, one of the categories of goods mentioned in *Kirtsaeng*:  "mobile phones." *Id*. at 1365.

Sprint's introduction of "leasing" and "financing" options perfectly illustrate the need for the common law's prohibition on restraints on alienation.  If Sprint leases a phone to a customer, it retains title, and it can therefore transfer that title (resell the phone) when the lease ends.  Likewise, if Sprint sells a phone but retains a security interest (the "Financing" option), then title

to the phone will "revert" to Sprint if the customer fails to make all payments.  In that case, either the customer or Sprint will be able to resell the phone with good title.

Under Sprint's interpretation of its Terms and Conditions, however, a Sprint customer cannot resell a Sprint phone that it purchases outright under the "Contract" option.  Sprint makes this assertion even though, as reflected in its advertisement, the customer obtains title free and clear immediately.  ("Keep your phone on day one.")  Permitting such a restriction would place the phone in legal limbo, with Sprint having transferred its entire interest, and not having retained a security interest, but without any party able to transfer title by reselling the phone.  This is precisely the result that the common law, the UCC, copyright law, patent law, and antitrust law operate to avoid by declaring such restraints facially invalid.  As a result, Sprint Handsets do not travel with any restrictions, particularly any "restraint on alienation."

## V.    CONCLUSION

Sprint has now filed three versions of an exhaustive shotgun complaint, firing every proverbial bullet in Sprint's arsenal of facts.  Three complaints by Sprint, yet not a single allegation that Defendant TCX or Defendant Rathbone either bought or sold a new Sprint Handset.  There is a simple explanation for that glaring omission:  Defendants TCX and Rathbone have not bought or sold new Sprint Phones, and were only included in this litigation because Sprint mistakenly thought that TCX was the corporate parent of World Wide Cells.  Sprint has finally named the actual corporate parent (World Wide Cells, LLC), yet Sprint stubbornly refuses to admit to its error and voluntarily dismiss defendants that it improperly named.

Defendants TCX and Rathbone have now provided affirmative discovery responses confirming that they have not engaged in the purchase or sale of new Sprint Handsets.  Defendants

cannot say it any clearer: <u>they do not buy or sell new Sprint Handsets</u>.  Sprint's refusal to listen is not, in fact, a sufficient basis for a motion to compel.  Again, Sprint simply cannot compel Defendant TCX or Defendant Rathbone to provide Sprint with a case that does not exist.  Moreover, Sprint is no more entitled to demand that Defendant TCX produce "all of its documents" than TCX would be to make that demand of Sprint.

Accordingly, Defendants TCX and Rathbone respectfully request that the Court deny Sprint's Motions to Compel in their entirety.